Luella J. Black
vs.
Massachusetts Accident Co.,
} Law. No. 91039.

April 3, 1934.

WALSH, J. Heard, Jury trial waived.

This is a suit brought by Luella J. Black, widow and beneficiary of Arthur J. Black, to recover upon an accident policy issued to Arthur J. Black by defendant company, which policy was in full force and effect on September 24, 1932, the date of the death of said Arthur J. Black. Black was murdered by a gunman on that date.

The company resists the payment of said amount on the following grounds: (1) that the death of insured was caused by homicide and such liability was *"not covered"* by the express terms of the policy; (2) the death of insured was not accidental, hence was not within the terms of the policy; and (3) the recovery, if any, must be limited to $150 in accordance with the provisions of the policy. The plaintiff contends that she is entitled to $800 for loss of life under clause E of the policy and $400 under clause F of the policy, or a total of $1200.

The provisions of the policy which are relevant to the determination of the present case are as follows:

ACCIDENT PROVISIONS

"(C) Total Loss. In the sum of seventy dollars per month for total loss of time for a period not exceeding five consecutive years, resulting directly and independently of all other causes from bodily injury sustained during the life of this Policy, caused solely through external, violent and accidental means (excluding suicide, sane or insane), and such as shall,

either from the date of the accident, or within ten days thereafter, continuously and wholly disable and prevent the Insured from performing every duty pertaining to any business or occupation, and not resulting in any loss specified in Paragraph E;"

"(E) Specific Losses. If such injury as described in Paragraph C shall within thirty days from date of accident, result in one of the following specific losses, the Company will pay one of the following benefits:
For Loss of Life Eight Hundred Dollars the principal sum; or, . . . . . . . "

"(F) Accumulation Feature. For each consecutive month immediately preceding the date of the accident that this Policy shall have been maintained in continuous force, One Per Cent. shall be added to the original amount provided for any loss under Paragraph E sustained by the Insured, but such additions shall never exceed Fifty Per Cent. of such original amount; or, . . . . . . "

GENERAL PROVISIONS.

"(S) Not Covered. The Company is not liable for any loss caused by or from the use of intoxicants or narcotics; venereal diseases; diseases of organs not common to both sexes; homicide; suicide; or disability originating or suffered outside the States of the United States, the District of Columbia, or Canada.

STANDARD PROVISIONS.

"1. This policy includes the endorsements and attached papers, if any, and contains the entire contract of insurance except as it may be modified by the Company's classification of risks and premium rates in the event that the Insured is injured or contracts sickness after having changed his occupation to one classified by the Company as more hazardous than that stated in the policy, or while he is doing any act or thing pertaining to any occupation so classified, except ordinary duties about his residence or while engaged in recreation, in which event the Company will pay only such portion of the indemnities provided in the policy as the premium paid would have purchased at the rate but within the limits so fixed by the Company for such more hazardous occupation.

"If the law of the State in which the Insured resides at the time this policy is issued requires that prior to its issue a statement of the premium rates and classification of risks pertaining to it shall be filed with the State official having supervision of insurance in such State, then the premium rates and classification of risks mentioned in this policy shall mean only such as have been last filed by the Company in accordance with such law, but if such filing is not required by such law then they shall mean the Company's premium rates and classification of risks last made effective by it in such State prior to the occurrence of the loss for which the Company is liable."

Defendant contends that the specific clause marked "S" expressly excludes recovery on the present policy in the circumstances of the instant case The

insured, Arthur J. Black, who described his occupation in his application for a policy on January 18, 1923, as "Chauffeur—private passenger car," was on September 24, 1932, engaged with others in furthering a "nigger pool" enterprise in the attic room of his residence; on that day a number of gunmen invaded the attic room and shot Black and another man; Black died of a bullet wound thus inflicted. Under Clause "S" "loss caused by or from * * * homicide" is "not covered", as stated in the policy.

"Homicide" is frequently defined as the killing of a human being by a human being or the killing of a human being by another human being. It is clear that this definition is not entirely accurate since it may be construed to exclude suicide, cases of involuntary manslaughter by a corporation, etc. Homicide may be lawful or unlawful, felonious or non-felonious. "Homicide" may be also defined as the destruction of the life of one human being either by himself or by the act, procurement or culpable omission of another.

Plaintiff contends that "homicide" being associated with less general terms in clause "S" must be restricted to a sense analogous to that of the less general words and that the one analogous meaning of these associated words, "suicide", "homicide", "venereal disease", "intoxicants" etc. is that the loss "caused by or from" any one must be due to the fault or wrong of the insured to enable the company to escape liability therefor. We realize fully that the policy of our Courts has been to construe, (whenever construction is necessary), the terms of the policy most favorably to the assured. "Homicide" is a specific exception to a general liability in the present policy. Effect must be given to that specific exception in the contract. If the assured culpably provoked or induced the act that caused his death, we would feel then that the result

was not accidental but was the natural and probable consequence of his act as an aggressor but if the other party to the occurrence is the aggressor, even though deliberately intending the act that caused the death of assured, the result as far as the assured is concerned is accidental.

We therefore must find that the "homicide" expressly excepted under clause "S" means a "homicide" to which the fault or wrong of the assured contributed, hence the death of the assured was accidental and was within the terms of the policy.

The remaining question to be determined is the amount to be recovered by plaintiff. The policy which is in evidence provides, under Clause I of Standard Provisions, that if insured is injured after having changed his occupation to a different classification than the one stated in the policy, the company would pay only such portion of the indemnity provided in the policy as the premium paid would have purchased at the rate but within the limits so fixed by the company for the occupation to which the insured had changed. It is admitted that the Classification Manual (Deft's Ex. A) was in force at the time of the death of the assured.

Black was insured as a chauffeur of a private passenger car. He gave no notice of a change of occupation to the defendant. At the time of Black's death he was engaged in some capacity with a "nigger pool" enterprise, admittedly an unlawful occupation. There is no classification of such an occupation in the Manual. There is a provision in the Manual under "Classification of Risks" to the effect that any occupation not classified therein "is hereby classified as X". It follows that Black had changed his occupation from one classified as "C" to one classified as "X" without notification thereof to the company. On page XI of the Classifica-

tion Manual, the amount due and payable upon death of a person engaged in an unclassified occupation is $50 where the monthly premium rate is $1.40. Black was paying $2.80 per month, hence his indemnity is $100. Adding to this sum $50, representing the additional amount due under the accumulation feature (Clause F) of the policy, the plaintiff is entitled to recover from defendant the sum of $150 with interest at the rate of 6% from the date of plaintiff's writ and costs.

For plaintiff: Luigi DePasquale.

For defendant McGovern & Slattery.